UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT ESTRIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-30058-KAR |
| ) | |
| THE TOWN OF WARE, KYLE WHITCOMB, ) | |
| CHRISTOPHER DESANTIS, DEREK ) | |
| DESRUISSEAUX, BRIAN D'AMICO, JODY ) | |
| GREENE, and PEDRO MONTEIRO, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS DESRUISSEAUX'S,
GREENE'S AND MONTEIRO'S MOTIONS TO DISMISS
(Dkt. Nos. 17, 33, 36)

ROBERTSON, U.S.M.J.

I.  INTRODUCTION

In the aftermath of Plaintiff Robert Estridge's ("Plaintiff") arrest in the driveway of his home in Ware, Massachusetts, he sued the town and the responding police officers pursuant to 42 U.S.C. § 1983 for violating his constitutional rights protected by the Fourth and Fourteenth Amendments and asserted associated state law claims (Complaint, Dkt. No. 1).  Three of the responding officers, Derek Desruisseaux, Jody Greene, and Pedro Monteiro (collectively, "Defendants"), have moved to dismiss the § 1983 claims against them (Dkt. Nos. 17, 33, 36). The parties have consented to this court's jurisdiction (Dkt. No. 47).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the following reasons, Defendants' motions to dismiss are DENIED.

II.  BACKGROUND[1]

---

[1] The facts, which are accepted as true for purposes of ruling on this motion, are drawn from the Complaint (Dkt. No. 1).

1

After 1:15 A.M. on April 30, 2017, Ware Police Officers Kyle Whitcomb and Christopher DeSantis responded to an anonymous tip reporting noise and possible underage drinking at Plaintiff's residence at 222 Belchertown Road, Apartment C (Compl. ¶¶ 3, 4, 16-18). Upon arrival at that address, Whitcomb and DeSantis heard loud music and observed "numerous motor vehicles lining the private driveway" (Compl. ¶ 19). As the officers walked up the driveway toward the residence, Plaintiff appeared and told the officers that he lived there, the officers were not welcome, and they would need a warrant if they wanted to enter (Compl. ¶¶ 20-22). Plaintiff then proceeded back up the driveway to the residence (Compl. ¶ 23).

Whitcomb and DeSantis remained on the property (Compl. ¶¶ 18, 24). After they requested backup officers from the towns of West Brookfield, Hardwick, Warren, and Belchertown and from the Massachusetts State Police, Whitcomb and DeSantis remained on the driveway and proceeded toward the backyard of the residence (Compl. ¶¶ 26, 27). Plaintiff exited from the residence and said, "'I don't want you guys here and you need to leave'" (Compl. ¶ 28). The officers responded by notifying Plaintiff that they were going to remain to investigate an anonymous tip concerning underage drinking (Compl. ¶ 29). While using "expletives and obscenities" and waving his hands, Plaintiff repeated his demand that the officers leave his property (Compl. ¶ 30). Whitcomb and DeSantis "threatened" Plaintiff with arrest for disorderly conduct if he did not consent to a search of the property (Compl. ¶ 31). When Plaintiff refused to consent to a search, Whitcomb and DeSantis placed him under arrest and escorted him to the rear of their police cruiser for transport to the Ware Police Department (Compl. ¶¶ 32, 33, 35, 36, 41).

Defendants Hardwick Police Officer Desruisseaux and Massachusetts State Police Troopers Greene and Montiero were among the backup officers who entered the property when

Plaintiff was secured in the cruiser (Compl. ¶¶ 5, 7, 8, 38, 39). Defendants and Trooper Brian D'Amico, another backup officer, "rounded up and arrested several of the guests" who they located on the property (Compl. ¶¶ 6, 39, 40). Ultimately, the Eastern Hampshire District Court found that there was no probable cause to arrest Plaintiff for disorderly conduct and resisting arrest and dismissed the charges (Compl. ¶¶ 41, 42, 47-49).

In Count I, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 by illegally entering onto his property in violation of his Fourth Amendment rights (Compl. ¶¶ 56-68).[2] Defendants have moved to dismiss Count I in nearly identical motions (Dkt. Nos. 17, 33, 36). Plaintiff has opposed dismissal (Dkt. Nos. 20, 39, 40).

III.    STANDARD OF REVIEW

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). "In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba,* 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2] Plaintiff brought the same claims against Whitcomb, DeSantis, and D'Amico and brought additional claims against those officers and the Town of Ware (Counts I – VIII). Although Plaintiff initially alleged intentional infliction of emotional distress against all officers including Defendants (Count V), he has agreed to dismiss that claim against Defendants (Dkt. Nos. 20, 39, 40). The only claims at issue here are the claims against Desruisseaux, Greene, and Montiero in Count I.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' *Iqbal,* 556 U.S. at 679, the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Twombly,* 550 U.S. at 556). However, "labels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action . . . " are insufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief." *Ngomba,* 2020 WL 107969, at *2 (citing *Iqbal,* 556 U.S. at 679).

IV.   ANALYSIS

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). "To prevail in a § 1983 claim, plaintiffs must establish three elements, to wit, the deprivation of a [federally secured] right, a causal connection between the actor and the deprivation, and state action." *Dominguez v. Figueroa Sancha*, 373 F. Supp. 3d 333, 343 (D.P.R. 2019). See 42 U.S.C. § 1983; *Gray v. Cummings,* 917 F.3d 1, 8 (1st Cir. 2019); *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). The first element is at issue here.

Count I alleges that Defendants violated § 1983 by depriving Plaintiff of his Fourth Amendment right to be free from a warrantless entry into his home (Compl. ¶¶ 61, 64).

Defendants contend that dismissal of Count I is required because (1) they did not deprive Plaintiff of his rights and, even if they did, (2) they are entitled to qualified immunity (Dkt. Nos. 18 at 6, 34 at 6, 37 at 6). Defendants maintain that the exigent circumstances exception to the warrant requirement permitted them to enter and remain on Plaintiff's property and "[t]o suggest that [their] obtaining a warrant under the circumstances would not be impractical is bordering on the absurd" (Dkt. Nos. 18 at 8, 34 at 8, 37 at 8). However, the facts as alleged in the complaint do not support Defendants' contentions.

      A.     <u>Qualified Immunity Framework</u>

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Castagna v. Jean,* 955 F.3d 211, 213 (1st Cir. 2020), *cert. denied,* No. 20-253, 2020 WL 7132271 (U.S. Dec. 7, 2020) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "When sued in their individual capacities, government officials like [Defendants] are immune from damages claims unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."'" *Id.* at 219 (quoting *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019) (en banc)). *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "Courts may analyze either part of the test first." *Castagna*, 955 F.3d at 219.

"The 'clearly established' inquiry itself has two elements." *Id.* "The first is focused on whether the law was '"sufficiently clear" such that every "reasonable official would understand that what he is doing" is unlawful.'" *Id.* (quoting *Eves,* 927 F.3d at 583) (alterations omitted). "Qualified immunity is supposed to 'protect "all but the plainly incompetent or those who knowingly violate the law."'" *Id.* (quoting *Eves,* 927 F.3d at 583) (alteration omitted). "Because of that, the right that was allegedly violated must be defined 'in a particularized sense so that the

5

contours of the right are clear to a reasonable official.'" *Id.* (quoting *Eves,* 927 F.3d at 583) (internal quotation marks omitted). "[A]lthough there need not be 'a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate.'" *Eves,* 927 F.3d at 583 (second alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The second element "'focuses on "the objective legal reasonableness of an official's acts,"'" and "'[e]vidence concerning the defendant's subjective intent is simply irrelevant . . . .'" *Eves,* 927 F.3d at 583 (alteration omitted) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588, 590 (1998)). This element provides "'some breathing room for a police officer even if he has made a mistake (albeit a reasonable one) about the lawfulness of his conduct.'" *Gray*, 917 F.3d at 10 (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 155 (1st Cir. 2018)).

      B.     <u>Defendants Are Not Entitled to Qualified Immunity Based on the Allegations in the Complaint.</u>

Based on the allegations in the complaint, Defendants are not entitled to qualified immunity for remaining on Plaintiff's property under the first and second prongs of the qualified immunity test. Defendants do not dispute that Plaintiff's Fourth Amendment right to be free of a warrantless intrusion into his home was clearly established in April 2017. Their contentions that the complaint fails to state a claim for a violation of Plaintiff's Fourth Amendment rights and that reasonable officers in their position would have believed they could remain on Plaintiff's property without a search warrant ignore the "clearly established" law concerning the requirements for applying the exigent circumstances exception to the warrant requirement. *Belsito Commc'ns, Inc. v. Decker,* 845 F.3d 13, 23 (1st Cir. 2016).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  *Welsh v. Wisconsin,* 466 U.S. 740, 748 (1984) (quoting *United States v. U.S. Dist. Court,* 407 U.S. 297, 313 (1972)).  *See Florida v. Jardines,* 569 U.S. 1, 6 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals.").  The curtilage, which is the area "immediately surrounding and associated with the home" is regarded as "part of the home itself for Fourth Amendment purposes."  *Oliver v. United States,* 466 U.S. 170, 180 (1984).  "It is a '"basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."'"  *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez,* 540 U.S. 551, 559 (2004)).  "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions."  *Id.*

"One well-recognized exception applies when '"the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'"  *Kentucky v. King*, 563 U.S. 452, 460 (2011) (alteration in original) (quoting *Mincey v. Arizona,* 437 U.S. 385, 394 (1978)).  By 2017, it was clearly established that the exigent circumstances "exception generally requires a threshold showing that law enforcement officers had probable cause to enter the premises."  *United States v. Almonte-Báez*, 857 F.3d 27, 31 (1st Cir. 2017) (citing *United States v. Capelton*, 350 F.3d 231, 240 (1st Cir. 2003)).  Indeed, the First Circuit stated as early as 2008 that it was clearly established that "'police officers need either a warrant or probable cause plus exigent circumstances, in order to

7

make a lawful entry into a home.'" *DeMayo v. Nugent*, 517 F.3d 11, 18 (1st Cir. 2008) (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)).

"Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (alterations in original) (quoting *Carroll v. United States,* 267 U.S. 132, 162 (1925)). *See Howes v. Hitchcock*, 66 F. Supp. 2d 203, 211 (D. Mass. 1999) ("Probable cause exists when 'the officers at the scene collectively possess[ ] "reasonably trustworthy information [sufficient] to warrant a prudent [person] in believing that [the suspects] [have] committed or [are] committing a [criminal] offense."'") (alterations in original) (quoting *Hegarty v. Somerset Cty.,* 53 F.3d 1367, 1374 (1st Cir. 1995)).

"Probable cause is a necessary, but not a sufficient precondition for invoking the exigent circumstances doctrine.  Even when armed with probable cause, the government still must show that an exigency existed sufficient to justify the warrantless entry." *Almonte-Báez,* 857 F.3d at 31. *See Commonwealth v. Tyree,* 919 N.E.2d 660, 670 (Mass. 2010) ("in the absence of consent, the Commonwealth must prove both probable cause to enter the dwelling and the existence of exigent circumstances.") (footnote omitted).  Exigent circumstances are present "when 'there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.'" *Matalon v. Hynnes*, 806 F.3d 627, 636 (1st Cir. 2015) (quoting *Fletcher v. Town of Clinton*, 196 F.3d 41, 49 (1st Cir. 1999)).  Exigent circumstances include:

> (1) hot pursuit of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to an occupant.

*Howes*, 66 F. Supp. 2d at 211-12 (quoting *Diaz v. City of Fitchburg,* 176 F.3d 560, 563 n.4 (1st Cir. 1999)).

Here, Plaintiff alleges that Whitcomb and DeSantis entered his driveway in response to an anonymous tip reporting loud noise and possible underage drinking (Dkt. No. 1 ¶¶ 16-20). Because the particular facts of a case determine whether or not a driveway falls within the curtilage of the home, *see United States v. Brown,* 510 F.3d 57, 65 (1st Cir. 2007) (citing *Rosencranz v. United States,* 356 F.2d 310, 313 (1st Cir. 1966)), Plaintiff's allegation that the driveway was "private" is the kind of conclusory allegation which the court is directed to disregard when assessing the sufficiency of a complaint (Compl. ¶ 19). *See Twombly,* 550 U.S. at 555. *Compare United States v. Diehl,* 276 F.3d 32, 39 (1st Cir. 2002) ("the significant portion of the driveway was far from public view.") *with United States v. Roccio,* 981 F.2d 587, 591 (1st Cir. 1992) ("there is no expectation of privacy in a driveway that is exposed to the public.") (citing *United States v. Hensel,* 699 F.2d 18, 32-33 (1st Cir. 1983)).  In any event, whether or not the driveway fell within the curtilage of Plaintiff's premises, the constitutional protection that is afforded to the home and its curtilage is not absolute.  "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Jardines,* 569 U.S. at 8 (quoting *King,* 563 U.S. at 469).  Therefore, Whitcomb and DeSantis had an implied license to approach Plaintiff's front door and to briefly remain on the property (Compl. ¶ 20).

According to the complaint, Plaintiff approached the officers in the driveway, told them that it was his residence and they were not permitted to enter without a warrant (Compl. ¶¶ 21, 22).  Plaintiff then returned to his home (Compl. ¶ 23).  He had no obligation to have a conversation with the officers.  *See King,* 563 U.S. at 469-70.  "Th[e] implicit license to

9

[approach a home and knock] typically permits the visitor to approach the home by the front path, knock promptly, wait *briefly* to be received, and then (*absent an invitation to linger longer*) leave." *Jardines,* 569 U.S. at 8 (emphasis added). It was the officers' warrantless extension of their visit thereafter that, Plaintiff alleges in the complaint, constituted an unreasonable government intrusion onto the property in violation of the Fourth Amendment. *See id.* at 6 ("At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable government intrusion.'") (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961)).

The exigent circumstances exception to the warrant requirement, upon which Defendants rely, did not permit Whitcomb and DeSantis to remain at Plaintiff's residence without a search warrant or to invite other officers on the property by requesting assistance from Defendants. *See Barbosa v. Hyland,* Civil Action No. 11-11997-JGD, 2013 WL 6244157, at *21, *24 (D. Mass. Dec. 2, 2013) (officers violated the Fourth Amendment by entering a home without a warrant and remaining there after the residents turned down the music). Defendants correctly note that knowledge of the tip concerning underage drinking and the observations of loud music and "numerous" vehicles lining the driveway after 1:15 A.M. are imputed to them through the collective knowledge doctrine. *See Howes,* 66 F. Supp. 2d at 212 n.5 (citing *Burns v. Loranger,* 907 F.2d 233, 236 n.7 (1st Cir. 1990)). Defendants contend that faced with those circumstances, "no reasonable officer" would have believed that his or her actions were illegal (Dkt. Nos. 18 at 8, 34 at 8, 37 at 8). However, accepting as true the allegations in the complaint, and limiting consideration to those allegations, objectively reasonable officers in Defendants' position would have known that their conduct was unlawful. *See Eves,* 927 F.3d at 583.

It was clearly established by 2017 that a noise complaint would not support the warrantless entry of Plaintiff's premises under the exigent circumstances exception (Dkt. No. 1 ¶ 19). *See Commonwealth v. Kiser,* 724 N.E.2d 348, 352-53 (Mass. App. Ct. 2000) (a complaint of loud music "does not involve the degree of exigency needed to bypass the Fourth Amendment's warrant requirement."); *see also Barbosa*, 2013 WL 6244157, at *24 & n.12 (declining to extend qualified immunity to officers who entered a home in response to a complaint of loud music and finding that, based on clearly established law, the officers "knew or reasonably should have known that it was unlawful for them to enter the . . . home without a warrant just because there was loud music."); *Commonwealth v. Kirschner*, 859 N.E.2d 433, 438 (Mass. App. Ct. 2006) ("more than a minor crime must be involved to justify the warrantless intrusion into a private residence.").

In addition, so far as appears from the face of the complaint, Defendants did not have probable cause to believe that Plaintiff had committed or was committing a crime. For this reason, the officers should have known that they did not have the requisite probable cause to remain on the property. *See Almonte-Báez*, 857 F.3d at 31. Although Massachusetts statutes make it unlawful to "furnish" alcohol to minors, Mass. Gen. Laws ch. 138 § 34, for a minor to possess alcohol unless "accompanied by a parent or legal guardian," Mass. Gen. Laws ch. 138 § 34C, and to contribute to the delinquency of a minor, Mass. Gen. Laws ch. 119, § 63, the anonymous tip provided the only evidence of possible crimes related to underage drinking. On its own, such an anonymous tip does not establish probable cause. *See United States v. Ferrer-Martell*, 218 F. Supp. 3d 143, 153 (D.P.R. 2016) (assuming that the officer received an anonymous tip that there were intruders on the defendant's property, the anonymous tip "without more – was insufficient to provide probable cause that a crime was being committed within the

premises of [the defendant's] residence") (citing *United States v. Struckman*, 603 F.3d 731, 741 (9th Cir. 2016), *United States v. Singer*, 687 F.2d 1135, 1144 (1982)).  There are no facts alleged in the complaint from which it can be reasonably inferred that the officers observed minors on the premises, observed minors who were intoxicated, or observed minors who were in possession of alcohol.  In these circumstances, a reasonable law enforcement official would have known that she (or he) lacked probable cause to believe that Plaintiff was committing a criminal offense and should have known that the exigent circumstances exception to the Fourth Amendment's warrant requirement did not permit him or her to remain on Plaintiff's premises.  *See Howes,* 66 F. Supp. 2d at 211 ("It was firmly established well before 1996 that the Fourth Amendment prohibits the warrantless entry into a private residence to effect a search or arrest 'except in exigent circumstances and with probable cause.'") (quoting *Hegarty,* 53 F.3d at 1373).

The cases cited by Defendants, *Howes,* 66 F. Supp. 2d at 203, and *Commonwealth v. Sueiras,* 892 N.E.2d 768 (Mass. App. Ct. 2008), are readily distinguishable.  In *Howes,* an officer, who suspected an underage drinking party, surveilled the residence and observed "large numbers of teenagers . . . entering or exiting the house carrying bottles and cans of beer" and "cases of beer being transported to the garage."  *Howes,* 66 F. Supp. 2d at 207.  When the minors who lived in the home responded to the door and told an officer that no adult was present and that no one inside their home was twenty-one years old, the officers had probable cause to believe that the residents were violating Mass. Gen. Laws ch. 138, § 34C.  *See id.* at 208, 212-13.  Similarly, in *Sueiras,* a criminal case, a juvenile court probation officer acted on a tip that the defendant, a high school teacher, was hosting underage drinking parties.  *See Sueiras,* 892 N.E.2d at 771.  The officer saw minors exiting from the defendant's home carrying alcoholic beverages.  *See id.*  After minors who left the defendant's home reported that they had obtained

12

the alcohol from her and after police officers smelled the odor of alcohol coming from those minors, the officers had probable cause to believe a crime was being committed. *See id.* at 772, 773. Immediate entry into the residence was necessary to prevent the "imminent destruction or loss of evidence." *Id.* at 773. In contrast, here, so far as appears from the face of the complaint, there was no comparable corroboration of the anonymous tip to establish probable cause and no exigency that justified a warrantless entry.

Facts may develop that would justify revisiting the issue raised by Defendants' motion to dismiss, and there may be other exceptions to the warrant requirement that would justify the Defendants' continued presence on the premises or provide Defendants with grounds for qualified immunity. Defendants, however, have limited themselves to the exigent circumstances exception to the warrant requirement and their contentions about qualified immunity as a basis for dismissal and raised this issue by a Rule 12(b)(6) motion, thereby limiting the court to the four corners of the complaint, *see, e.g., Doe v. Town of Wayland*, 179 F. Supp. 3d 155, 163 (D. Mass. 2016), and the court will not address an argument that Defendants have not raised. *See, e.g., United States v. Apicelli*, Criminal Number 14-cr-12-01-JD, 2015 WL 3515424, at *2 (D.N.H. June 4, 2015) (the court is not obligated to address an argument that was not properly developed). Based on the allegations in the complaint, the exigent circumstances exception does not justify dismissal pursuant to Rule 12(b)(6). Consequently, Defendants' motions are denied.

V.  CONCLUSION

For the reasons stated above, Defendants Desruisseaux's, Greene's, and Monteiro's motions to dismiss (Dkt. Nos. 17, 33, 36) are DENIED. It is so ordered.

March 25, 2021                                   /s/ Katherine A. Robertson
                                                 KATHERINE A. ROBERTSON
                                                 U.S. MAGISTRATE JUDGE